# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| LAZARUS DONATO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Docket No. 2:17-cv-145-NT |
| GRANITE BAY CARE, INC., | ) ) ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Before me is the Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6). For the reasons stated below, the motion is **DENIED**.

## LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." In reviewing a 12(b)(6) motion, the court must "construe all factual allegations in the light most favorable to the non-moving party to determine if there exists a plausible claim upon which relief may be granted." *Flock v. U.S. Dep't of Transp.*, 840 F.3d 49, 54 (1st Cir. 2016) (citation omitted). A complaint need only be plausible and does not have to allege every fact necessary to win at trial. *Rodríguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 283 (1st Cir. 2014). Put another way, a plaintiff need not "plead facts sufficient to establish a prima facie case" to survive a motion to dismiss. *Id.*

## BACKGROUND

The Plaintiff is Lazarus Donato. Donato began working for Defendant Granite Bay Care, Inc. ("**Granite Bay**") eight years ago. Compl. ¶ 6 (ECF No. 1-1). Granite Bay provides residential home services for individuals with cognitive and developmental disabilities. Compl. ¶ 7.

In August 2015, Donato was working as a House Manager at Granite Bay's Gorham, Maine location. Compl. ¶¶ 5-8. He became concerned that a subordinate, "Mr. X," was not providing sufficient support to clients. Compl. ¶ 8. Donato addressed "what he believed to be client safety issues" with Mr. X several times. Compl. ¶ 9. But despite Donato's efforts, Mr. X's conduct did not improve. Compl. ¶ 9. So, in November 2015, Donato relayed his concerns about Mr. X to Program Manager Patrick Abedi and Area Director Elmautz Abdelrahim. Compl. ¶ 10. Donato also spoke with Abedi about conducting a performance review for Mr. X. Compl. ¶ 11. Abedi believed that Abdelrahim would reject any attempt to take corrective action against Mr. X because Abdelrahim and Mr. X were friends outside of work. *See* Compl. ¶ 11.

On December 16, 2015, Donato "took two hours off from work due to an emergency." Compl. ¶ 13. Abdelrahim wrote up Donato for taking the time off. Compl. ¶ 13. When Donato questioned Abdelrahim as to why Mr. X could take time off with no issues while he could not take two hours off, he was given a corrective action without any counseling. Compl. ¶ 13. Donato told Abdelrahim that he felt he was being discriminated against because Mr. X was not being punished for anything, yet Donato was punished. Compl. ¶ 14. In response, Abdelrahim threatened Donato with additional corrective action and said that Donato's program was being "monitored for

fraudulent work hours." Compl. ¶ 15. Abdelrahim also warned Donato "to watch his tone because [he] had the power to replace him at any given time." Compl. ¶ 15.

On January 6, 2016, Donato met with Director of Operations Elizabeth Sullivan and Human Resources Director Amy Fecteau to express his concerns about "Abdelrahim's intimidation, discrimination and abuse of power." Compl. ¶ 17. Sullivan and Fecteau recommended that they meet with Abdelrahim and Abedi and said that they would serve as "mediators/supervisors." Compl. ¶ 17. Before the meeting, Abdelrahim attempted to make Donato "sign an agreement to not bring up discrimination at the meeting;" Donato refused. Compl. ¶ 17.

The meeting did not go well. Abdelrahim accused Donato of being a liar and said he no longer wanted to work with him. Compl. ¶ 18. On January 27, 2016, Sullivan called Donato and told him he was being "transferred to another location about an hour away from his home." Compl. ¶ 19. Donato told Sullivan that he did not want to be transferred, and Sullivan told him that he could either "voluntarily resign or take a demotion." Compl. ¶ 20. Accordingly, Donato "was forced to accept the transfer and started working in Waterboro in early February of 2016." Compl. ¶ 20.

On March 22, 2017, Donato brought suit in state court against Granite Bay for retaliation in violation of the Maine Whistleblower Protection Act ("**MWPA**") and the Maine Human Rights Act ("**MHRA**"). After removing the case to this Court based on diversity jurisdiction, Granite Bay filed this motion to dismiss.

3

## DISCUSSION

To establish a retaliation claim, an employee must prove that "(1) she engaged in activity protected by the statute; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action."[1] *Harrison v. Granite Bay Care, Inc*. 811 F.3d 36, 46 (1st Cir. 2016) (citing *Costain v. Sunbury Primary Care, P.A.*, 954 A.2d 1051, 1053 (Me. 2008)).

Granite Bay contends that Donato fails to state a plausible retaliation claim because he has not sufficiently alleged an adverse employment action. Def.'s Mot. to Dismiss 1. "An adverse employment action is an action that materially changes the conditions of an employee's employment." *Sullivan v. St. Joseph's Rehab. & Residence*, 143 A.3d 1283, 1288 (Me. 2016). The MWPA defines discrimination by stating that "[n]o employer may discharge, *threaten* or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment." 26 M.R.S.A. § 833(1) (emphasis added). Accordingly, "threats by an employer against the employee's status of employment," whether or not the threats are actually acted upon, can constitute adverse employment actions. *LePage v. Bath Iron Works Corp*., 909 A.2d 629, 636 (Me. 2006).

In this case, Donato alleges, among other things, that he was threatened with termination, accused of fraud, pressured to sign an agreement to not bring up complaints of discrimination with human resources, transferred to another location

---

[1] An employee alleging a violation of the Maine Whistleblower Protection Act may pursue a claim under the Maine Human Rights Act. *Currie v. Indus. Sec., Inc*., 915 A.2d 400, 404 (Me. 2007).

an hour from his home, and unfairly disciplined. Compl. ¶¶ 13-21. These allegations, taken as true and viewed in the light most favorable to Donato, are plainly sufficient to state a plausible claim for retaliation under Maine law. *See, e.g., LePage*, 909 A.2d at 636 (noting that threat of termination alone may constitute an adverse employment action under the MWPA); *Brown v. Town of S. Thomaston*, No. 08-308-PH, 2009 WL 1873097, at *21-22 (D. Me. June 29, 2009) (same); *see also Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 49-50 (1st Cir. 2012) (holding that plaintiff plausibly pled an adverse employment action in a political discrimination case where he claimed that he was involuntarily transferred to a remote work station 90 minutes from his home). Given the "cumulative weight" of the allegations, I need not decide "whether each of these individual allegations would, standing alone, be sufficient to state a plausible claim for relief." *Rodríguez-Vives*, 743 F.3d at 286. Such an analysis is better suited for resolution on a developed factual record at summary judgment.[2]

## CONCLUSION

For the reasons stated above, the Defendant's motion to dismiss is **DENIED**. SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 14th day of August, 2017.

---

[2] Indeed, in its motion to dismiss, Granite Bay does not rely on a single case decided at the 12(b)(6) stage in advancing its argument.